which is 23-201, Liebermax v. Debra Kaplan. Good morning, your honors. Good morning, and I understand you would like to reserve two minutes for rebuttal, is that right? Yes, your honor. Please proceed. Good morning. I'm Andrew Celi. May it please the court, I represent the appellant, Liebermax, in this case. Your honors, something very disturbing has been going on in the guardianship part in New York County Supreme Court. Judges there are routinely engaging in improper ex parte communications. And so we should take it over and make sure that that stops? Absolutely not, your honor. I believe that the federal court should simply declare that the due process clause requires the application of an ex parte rule in contested proceedings even if one of the parties in the dispute is a guardian. It's that simple. How is that not us intervening and telling them to stop? I suppose it's not an injunction, is that your point? Well, there are two forms of relief that we think, either one of which would be appropriate. One and neither of which implicate any of the prudential concerns of the abstention doctrine. And I think it's important to say the abstention doctrine is an exception. And if you look at the Sprint case, Justice Ginsburg's opinion in that case, she says we really need to exercise federal jurisdiction where it exists. We should not just defer to abstention, it's the other way around. But the two forms of relief are both what I call one and done forms of relief. So you're not asking for an injunction? Well, the injunction, if you were, you're withdrawing that? No, the injunction that we would ask for, Judge Lynch. An injunction is not a one and done. An injunction is never a one and done because you have to enforce the injunction. You could come back and ask for contempt if people don't do what we tell them to do, right? Right, but this is a mandatory injunction. This is not a prohibitory injunction. No, but mandatory. If we tell them go do X, they don't, you come in, you say, Judge, they're not doing it, which means that we're dragging- They don't do it well enough. We're dragging state court judges into this federal court and holding them in contempt? The X in that sentence, in that injunction, is issue a policy simply saying that the due process clause requires that the ex parte rule applies in guardianship court to contest this injunction. Okay, so they issue that rule and people continue, judges, individual judges continue not to comply with that rule. Aren't you back here the next day saying not only are they in trouble, but Kaplan is in trouble because she winked at them when she issued that rule. It's a different case, Your Honor. That's not the case we brought. That's not the case that we're pursuing here. But isn't that the necessary consequence of issuing an injunction saying you've got to do something to stop this? That's not the injunction we're seeking, Your Honor. The injunction we're seeking is issue a policy saying that this rule applies. And the reason that's sufficient- So you're saying it's a issue of policy to comply. Yes. So let me back up a step. What exactly is a policy that announces what the due process clause requires? I mean, do we do that to ... Does anybody, does any court issue a rule saying the rule is that the constitution means something? I thought that's what court cases do. So I don't even understand, and I know this is getting beyond abstention, but this is getting onto ... I don't even understand what this purported injunction is. It's simply- I mean, why? Why would you- It's a declaration in a different form. And I think the why question, Your Honor, is the right question. What we have going on in New York County guardianship is not- No, I understand that. I mean, why a policy that says what the constitution is? Because, and maybe this is going to redress ability and standing. I don't know what it's going to. But if your argument is that they won't listen to the constitution, but they just might listen to a policy, because policies we care about, due process, schmoo process, I mean, is that really the argument? There is a deep misunderstanding among the state court judges about this rule. This is not a situation where the judges are just saying, well, I don't really care what the rule is. That doesn't apply to me. They actually believe that they can, as a matter of law, have ex parte communications and contested matters- So when there is an ex parte communication and contested matter, why doesn't somebody appeal that? Because for a number of reasons. Number one, and this happened to Ms. Max on a number of occasions, she didn't learn about it until more than almost a year later. She only learned about it accidentally. These are, by definition, secret communications. But the case is still going on. The case is still going on. So can you appeal, or can you seek mandamus relief in state court? So the issue there has been that she has not been able to, they have not issued appealable paper on these issues. So you can take a mandamus. I mean, mandamus is rare, but we hear those. Has anyone tried? The issue has come up in the appellate division on other questions. It's been mentioned in other matters. But here we're seeking- No, I mean in this case. In this case, yes. Have you sought mandamus? On this particular issue, we have not sought mandamus because we have not had a matter, a specific matter that we could timely deal with that was, so for example, the fact that there was ex parte communications that happened, that we learned about a year later, that came up in the context of an application to remove a particular guardian. That application was sat on for about a year, and it never went on appeal. Eventually that particular guardian resigned from the position. So that particular issue became moot. So when you have these behind the scenes and secret communications, the normal avenues of appeal that you see in all these other cases simply do not arise with regularity. So what has Ms. Max done with this? On a consistent basis, and this is outside the record, but I'll represent to you, on a consistent basis, she and her counsel in the guardianship court have stood up and said, Your Honor, we believe the ex parte rule applies. We believe the due process requires that you not engage in ex parte communications. And we would ask that you not have ex parte communications. And as recently as October of 2023, the judge said, I'm going to have ex parte communications. Why can't you mandamus that right then and there? We didn't mandamus it. There are many, many issues in the case. Why not? Why not? Why isn't that the question? Maybe I shouldn't be asking you why not. That might be your tactics, or your colleagues' tactics, or something we shouldn't inquire into. But isn't that an available remedy? At that moment, you have a judge saying, I'm going to do something that's unconstitutional. I mean, in the absence of appealable paper, I don't think it's a reasonably available. I mean, this is in the. You have a judge say, according to your understanding of the law, you have a judge in a court saying, I'm going to violate the Constitution. I'm going to do it because I don't think the Constitution tells me I can't do it. Why can't you take that transcript and go to the appellate division and say, stop him. You can't do this. He said he's going to do it. Can't do it. I'm not the counsel in that case. Well, I'm not asking you why you didn't do it. I'm asking you to tell us, why isn't that an available remedy in an ongoing case? Because from our perspective, that does not create the kind of record that. Okay, hang on. Not from your perspective. Why is a legal matter is it unavailable? And give us a citation to New York law. As the New York Court of Appeals said, thou shalt not take a mandamus action in the absence of X, and you're going to then represent there's not X. Give us a legal basis. I think the legal basis, Judge, very simply is that a judge announcing that she. No, give us a source of authority, like cite something from Westlaw. Yeah, I don't have a case for you. No, no, to be fair. Not just what your perspective is. Right, fair enough. Because that's just making stuff up. Fair. Well, I don't think it's making stuff up. I mean, the point of our appellate system is that an action is taken by a judge, and it's ruled on, and then you go and take an appeal or a mandamus either way. Well, but you asked for specific relief. I mean, again, I'm not questioning anybody's tactics or whatever. The why didn't you isn't really the right question. Why couldn't you is the right question, and I don't see it. In fact, when a judge sits on a motion for a year, we often have people seeking mandamus. They don't usually get it the first time. What they usually get is something saying mandamus denied with leave to renew in six months if something hasn't happened, right? And then if it still hasn't happened in six months, then they do get it. And that's an inaction, not a ruling made by the court. Here, you've got something stronger. You've got a ruling, apparently, that you specifically asked the judge to desist from unconstitutional conduct. And the judge says, I don't care, I'm going to do it anyway. Why is it not available to go to an appellate court and say this judge is telling us that she's going to violate the constitution and you should tell her to stop? And there may be, to Judge Nardini's point, there may be technical legal answers to that under state law that I'm not in a position to respond to here. Okay, well then on that note, why don't we hear from counsel for the appellate if you're not prepared to tell us whether you can or can't do it under state law, because that's one of the key questions. Well, we're going to hear from counsel for the appellate. And maybe one question would be whether counsel for the appellate knows whether there's an answer to that question. Under New York law, is there a procedural vehicle for complaining to a superior court that a lower judge has announced openly in court, I plan to violate the constitution in the following way, X. Yes, your honor, and good morning. May it please the court. Anagha Sundararajan from the Office of the Attorney General for Appellee Debra Kaplan. To address your point, your honor, yes, there is a mechanism under New York law. That mechanism primarily is what under the CPLR is Article 78. I'm sorry, could you say that? Article 78 of the CPLR, which lays out the process for taking what is called a special proceeding up to the appellate division that can be a writ of mandamus, a writ of prohibition, what have you, that is one mechanism they could have taken advantage of here. The other mechanism is under New York law, orders either dissolving, modifying, or refusing to dissolve or modify the terms of a guardianship are routinely appealed to the appellate division. Well, but that one of these, Mr. Chelley says that that wouldn't work unless you know at the time that a ruling has been made retaining the guardian that there has been ex parte communication. And that may not be, you may not find that out until after the time to appeal has run. That may be true, your honor. However, in that case, there are mechanisms to ask the appellate division to enlarge the time to appeal. Or again, there are other mechanisms, including Article 78. So you can take an Article 78. In Article 78, I've encountered mostly in the context of sort of administrative law cases. That's correct. But the idea is, this is a way of going to the appellate division and saying precisely what's being said here. That something is being done wrong by somebody, and they should be told to stop and change it. That's correct. And that could be, I don't know, you can tell me. But if one discovers the defect a year later, can one use Article 78 in an attempt to sort of collaterally, I don't know if you want to call it collaterally attack the decision. Or if you find out a year later that the judge took a bribe in issuing the decision, is there a basis procedurally, whether under Article 78 or otherwise, even though the normal time to appeal has run, to somehow, let me call it a collaterally attack. That's my understanding that there is. It may not precisely be under Article 78, but under the CPLR. And there's certainly no authority that would suggest that you can't take an appeal. And that the appellate division could not exercise its discretion to hear the appeal in a circumstance like this, where the information comes to light later. Where does the Article 78 go? Does that, that doesn't go to the appellate division directly. It does. It does go to the appellate division. It does go directly to the appellate division. Correct. And in this case. And ultimately, of course, if they say no, and you ask for leave to appeal to the court of appeals, and they say no. You could, in principle, in practice, seek certiorari from the Supreme Court of the United States, and say all these guys are violating the federal constitution. That's absolutely right, your honor. If you have a federal claim, and you take it all the way up to the top of the state court system, and it's still denied, that's what the Supreme Court is for. That's absolutely correct, your honor. And in this case, where the plaintiff has not made any effort, as far as we are aware, and certainly on this record, to avail herself of any of the remedies afforded by state law. It is not the place of this court to step in and issue an order that would essentially supervise the conduct of the guardianship courts, that would issue an order against, I would point out, the deputy chief administrative judge for New York City. Yes, we never got to it in Mr. Shelley's argument, but I take it his other one and is we should let the district court have a trial in which damages can be assessed against the chief administrative judge for not having issued a policy or I thought what they were actually asking for was a court rule. I thought they were saying that this particular administrative judge has the ability to unilaterally make the equivalent of a local rule in the federal system, saying this isn't in the CPLR, but it is in the Constitution, so I'm going to make it a rule. Rule 37.6B, no ex parte communications, and she hasn't done that, and that has resulted in damage to Ms. Metz, which can be then remedied by an award of personal liability against that judge. So there are several problems with that, Your Honor. There are a few. An interesting question is whether Judge Cote hit on the right one in saying this is a standing problem, as opposed to it's either absolute judicial immunity or absolute legislative immunity because what she's being asked to do is to legislate a rule. Or at worst, if you treat her as the brief seems to do, as the boss of the other elected judges in the system, which strikes me as weird, that she's just like the chief of police who can be held accountable for constitutional violations by subordinates based on a failure to train. And she doesn't have qualified immunity there because why, I don't know, because I don't know of any case law from the Supreme Court or this court saying that administrative judges have a constitutional duty to, on pain of damages, issue rules and regulations. So a few responses to that. So there are a few problems. There are, as we said, there are a few problems, and I'd like to begin with, we think Judge Cote got it right. That there is a fundamental standing problem here because you cannot trace this past injury to Judge Kaplan as the Deputy Chief Administrative Judge. And in any event under state law, she has no authority to supervise how these judges conduct themselves in their courtroom, that's the job of the appellate division, not of the Chief Administrative Judge. And so there's both a traceability and a redressability problem for purposes of standing. However, this court can affirm on any basis that's apparent in the record. And we would suggest to this court that issues of judicial immunity, qualified immunity, legislative immunity, and this fundamental issue of causation, where their papers seem to misunderstand the role of the Deputy Chief Administrative Judge, and equivocate that to something akin to the Chief of Police, which as your honor knows is just not their job. Any one of those independently would be a sufficient basis for affirming the judgment below. In your view, what would be the most straightforward view? Obviously you want us to affirm. If you were to propose to us what you would think is the most straightforward basis, single basis to affirm, what would you be advocating to us? There to your honor, with respect to- Give me your best, the top one, then you can tell me your backup. We think this court can affirm as a straightforward word application of its decision and disability rights under a combination of Younger and O'Shea abstention. Well, I think disability rights controls as to any injunctive relief and probably declaratory relief. But that's based on Younger abstention and the O'Shea twist on Younger abstention. I hate the idea that every case the Supreme Court decides creates its own abstention doctrine. I think O'Shea is just part of Younger, but whatever. That covers equitable relief, but it explicitly doesn't cover damage actions. With respect to damages, we think, again, the district court got it right. The cleanest way to decide this is on terms of standing. That there's no traceability or redressability, that if people are going to violate the Constitution, judges are going to violate the Constitution in managing their cases, that's not the responsibility. That's not traceable to the fact that the Chief Administrative Judge hasn't trained them properly. That's correct, and again, that's not the role of the Chief Administrative Judge. This would be the equivalent of saying Chief Judge Swain in the Southern District of New York could be held. You could trace an injury to her because some other judge on the court did something that a litigant did not like. Or that a litigant thought violated their constitutional rights in the course of proceedings in their courtroom. That's not the system at the federal level. It's not the system at the state level, and any injury here cannot be traced to Judge Kaplan. And I would add, Judge Kaplan has no authority under state law to review or overturn the decisions of individual judges. But does she have a right to issue rules? She can absolutely issue rules, Your Honor. However, her role, again, is administrative. It's to make sure that the courts run efficiently, and she cannot go around and Again, that is the job of other mechanisms within the state court system. And the injuries complained of here just are not traceable to her. They are not redressable by her, and this court can affirm on that basis. Thank you very much, and we understand your argument. Why don't we hear from Mr. Chelley, you've reserved two minutes of rebuttal. If there's anything you would like to add based on what you've heard from counsel for the other side. And as we've done with everyone, we're going to try to hold you to two minutes of rebuttal. Absolutely, Your Honor. I wanted to respond to Judge Lynch's question about Judge Kaplan's authority. I think it's very important. In the complaint, we allege at footnote two and at footnote five that in her role as Deputy Chief Administrative Judge, she in fact has a role in issuing these kinds of policies. And when I say these kinds of policies, we're pretty specific about it. Because the rule that applies, which is section 100.63, I believe is what it is, is called adjudicative responsibilities. And that's the rule that says, thou shalt not engage in ex parte communications. And that's a rule that's issued by the Chief Judge, but under the powers that have been delegated, could be issued also by the Deputy Chief Administrative Judge, or in her role as the Supervising Judge.  So you're saying there already is a rule? There absolutely is a rule. It's just that the judges have been instructed and counseled under the record by their own words that it does not apply to guardianship proceedings where there's a contested matter with the guardian. That's the case right there. So there is a state rule. It applies. If there's a question of whether that rule is sufficient, and it's a state law question, you can certify that to the Court of Appeals, and we'll take it up over there. But still, then the mind boggles all the more. So there is a rule that you say means this, and the judges misunderstand it. Exactly. So it is the role of the judge to, the administrative judge, to issue another rule that is more specific? Or for the federal court to declare that the Due Process Clause requires this kind of rule. And then what the state courts do with that is up to them. Well, no, but I think we're past that on Younger. I want to get back to the damages claim. Okay. That you're actually asking that there be a trial here to assess damages against the Chief Administrative, Deputy Chief Administrative Judge for failing to adopt a rule. That's right. That's a claim that we have in the case. I think if you look at the complaint, Judge Lynch and members of the court, it is very carefully drawn. The point of a damages claim is to ensure that in the event that something were to change, Ms. Maxwell would still have relief, and it would be a very narrow damages claim. This is not some, you know, big jury thing. Well, pretty broad. Everybody gets to come into federal court saying, well, I, let me tell you another thing. Another time that the state judges violated my constitutional rights, and I'm going to sue in federal court because this same lead judge in state court didn't issue a policy preventing that misinterpretation of the Constitution. That would open quite an amazing can of worms, right? I don't think so. Why not? Because there's precedent in this court, the Knopf case. There's precedent from the Supreme Court that the Due Process Clause does forbid these kinds of communications. Yeah, and maybe somebody who does it, but somebody who does it would be judicially immune from damages. And you're saying that somebody who has not issued a rule telling the judges that they can't do it can be held in damages. And that would not, even assume this is a police chief, I mean, are you saying that there is some authority from the Supreme Court or from this court that could overcome qualified immunity that says a reasonable Deputy Chief Administrative Judge would clearly know that it is a violation of the United States Constitution for her not to issue a rule clarifying that a rule that already exists has constitutional force and must be complied with in these contexts? Your Honor, the question that you ask is exactly why the alternative basis should not be addressed in this proceeding that goes to the contours of the right. If we're talking about qualified immunity, right, that's what you're talking about. Yeah. I'm asking you, tell me what case says that the Chief Administrative Judge or his or her Deputy, and I don't know why you pick on this particular person rather than the Chief Judge, but why any of these people have a constitutional duty to issue rules supervising the judges in their courts in this way? What does that mean? I'll give you a couple of cases on that. First of all. Give me one. Just tell me what case. Well, you have to put a few things. We have a limited amount of time. Give us your best single case because we're already over. We've got one case. Look, I would just mention Hernandez v. Keene, which is not a case about judges, but if Judge Kaplan were a civilian administrator, which is what she's doing in this role, a civilian administrator, under Hernandez v. Keene. Okay, but the answer is you have no cases about judges. We understand your argument. Thank you, Your Honor. And we will take the case under advisement. Thank you very much.